IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DENISSE MUNIZ, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 1:20-cv-03200-LMM |
| FENIX INTERNATIONAL LIMITED, | |
| Defendant. | |

## **ORDER**

This case comes before the Court on Defendant Fenix International Limited's Motion to Dismiss Based on *Forum Non Conveniens* [19] and Motion to Dismiss Complaint in Part Pursuant to Federal Rule of Civil Procedure 12(b)(6) [20]. After due consideration, the Court enters the following Order:

I. **BACKGROUND**

This dispute concerns an alleged breach of the Terms of Service ("Terms") of OnlyFans.com ("OnlyFans"), a website that allows users to pay for pornographic content uploaded by individual content creators. Dkt. No. [1] ¶ 17. Defendant, a corporation registered in England, operates OnlyFans. Id. ¶¶ 4, 16. OnlyFans allows users to earn fees for referring other users to the platform; the Terms govern that referral program. Id. ¶ 18. Plaintiff claims Defendant violated the Terms by failing to disburse referral fees it had promised to pay her.

Plaintiff joined OnlyFans in October 2017. Id. ¶¶ 15, 19. At that time, she "entered into a binding contract with [Defendant] when she agreed to [its] Terms of Service." Id. ¶ 44. The Terms contain the following provision:

**17. Governing Law and Dispute Resolution**

17.1 You and we agree that these Terms shall be governed by and construed in accordance with the laws of England and Wales (without regard to the conflict of laws provisions thereof) and that any dispute between you and us concerning OnlyFans or arising out of or related to these Terms shall be resolved in the courts of England and Wales.

17.2 Except where prohibited by applicable law, any claim or cause of action by you concerning OnlyFans or arising out of or related to these Terms must be filed within one year after such claim or cause of action arose, or be forever barred.

Dkt. No. [19-1] at 43.[1] Three months later, Plaintiff inquired about "becom[ing] an affiliate influencer" for OnlyFans. Dkt. No. [1] ¶ 20 (alterations omitted). An OnlyFans representative informed Plaintiff that the website's referral program allowed her to "earn 5% (lifetime) on ALL income earned by anyone who join[ed]

---

[1] Generally, courts cannot "consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss," and Plaintiff did not attach the Terms to her Complaint. Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007). However, a well-settled exception exists where "a plaintiff refers to a document in [her] complaint, the document is central to [her] claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." Id. Plaintiff refers to the Terms throughout her Complaint, predicates each of her claims on their violation, and does not argue that the copy Defendant submitted is inauthentic. See Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005) (citation omitted) ("In this context, 'undisputed' means that the authenticity of the document is not challenged.").

via [her] referral link." Id. ¶ 22. Plaintiff has since referred more than 7,000 users to OnlyFans. Id. ¶ 24.

One such user was Trisha Kay Paytas, who joined OnlyFans in April 2019. Id. ¶ 27. Plaintiff expected to pocket 5% of the revenue Ms. Paytas generated during the life of her account. However, OnlyFans announced that beginning on May 1, 2020, referrers would receive a percentage of their referees' income only during the first year after the referee joined, and referral payments would not exceed $50,000 per referred account. Id. ¶ 32. On May 21, 2020, OnlyFans removed from Plaintiff's OnlyFans account more than $18,000 attributable to Plaintiff's referral of Ms. Paytas. Id. ¶ 34. When Plaintiff inquired about these funds, OnlyFans replied that the Terms allowed it to alter the Terms' provisions at any time. Id. ¶ 38.

Plaintiff brought suit on July 31, 2020, raising claims for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, and unjust enrichment. Defendant then filed two motions to dismiss: one to dismiss the Complaint in its entirety under the doctrine of *forum non conveniens*, see Dkt. No. [19] and another to partially dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), see Dkt. No. [20]. Both motions are fully briefed and are now ripe for the Court's review. See Dkt. Nos. [26]–[29]. The Court will first address the *forum non conveniens* arguments.

## II. LEGAL STANDARD

In its motion to dismiss on *forum non conveniens* grounds, Defendant argues that a forum selection clause applies to this litigation and mandates its dismissal. "[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex., 571 U.S. 49, 60 (2013); see also Pappas v. Kerzner Int'l Bah. Ltd., 585 F. App'x 962, 967 (11th Cir. 2014) (per curiam); Hisey v. Qualtek USA, LLC, 753 F. App'x 698, 704 (11th Cir. 2018). To obtain dismissal under *forum non conveniens*, the moving party must demonstrate that "(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate [the] suit in the alternative forum without undue inconvenience or prejudice." Leon v. Millon Air, Inc., 251 F.3d 1305, 1311 (11th Cir. 2001).

When parties have agreed to a valid forum-selection clause, however, a court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." Atl. Marine, 571 U.S. at 64. "Forum-selection clauses are presumptively valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." Krenkel v. Kerzner Int'l Hotels, Ltd., 579 F.3d 1279, 1281 (11th Cir. 2009) (per curiam). Where valid, forum-selection clauses require dismissal in favor of the parties' preselected forum "except in unusual cases." Atl. Marine, 571 U.S. at 64.

"[T]he plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed." Id.

### III. DISCUSSION

In analyzing whether this case should be dismissed on *forum non conveniens* grounds, the Court begins with two preliminary matters. First, Plaintiff's claims lie within the scope of the forum-selection clause. They plainly "concern[] OnlyFans" and are "related to" the Terms; each claim arises from Defendant's alleged violation of those Terms. Dkt. No. [19-1] at 43; see Slater v. Energy Servs. Grp. Int'l, Inc., 634 F.3d 1326, 1330–31 (11th Cir. 2011) (construing similar clause "applicable to 'all claims or causes of action relating to or arising from'" an employment agreement). Neither party disputes that "the plain meaning of [the clause's] language" encompasses Plaintiff's claims. Slater, 634 F.3d at 1330.

Second, the clause's stipulation that "any" dispute "*shall* be resolved in the courts of England and Wales" is mandatory, rather than permissive. Dkt. No. [19-1] at 43 (emphasis added). "'[A]ny' means all." Don't Look Media LLC v. Fly Victor Ltd., No. 20-10779, ___ F.3d ___, 2021 WL 2280897, at *10 (11th Cir. June 4, 2021) (citation omitted). And "the use of the term 'shall' is one of requirement" that "dictates an exclusive forum for litigation under the contract." Slater, 634 F.3d at 1330 (citation omitted). Thus, if the Terms' forum-selection clause is valid and the remainder of the *forum non conveniens* analysis favors

5

dismissal, Plaintiff has no choice but to assert her claims in England and Wales, and this action must be dismissed. See id.

### A. Validity of the Forum Selection Clause

A forum-selection clause may be invalidated for any of four reasons: "(1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of [her] day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." Krenkel, 579 F.3d at 1281 (citing Lipcon v. Underwriters at Lloyd's, 148 F.3d 1285, 1296 (11th Cir. 1998)). The Court takes each in turn.

#### i. *Fraud or Overreaching*

A forum-selection clause created without negotiation must have been "reasonably communicated to the consumer," considering its "physical characteristics and whether the plaintiff[] had the ability to become meaningfully informed of the clause and to reject its terms." Id. Plaintiff offers several arguments why Defendants did not reasonably communicate the forum-selection clause to her, but none are persuasive.

First, Plaintiff says "the rationale for upholding adhesion contracts in face-to-face encounters does not apply . . . to this case because it concerns an online transaction."² Dkt. No. [26] at 12. However, she offers no doctrinal support for

---

² For this and other arguments discussed below, Plaintiff relies in significant part on Berkson v. Gogo LLC, 97 F. Supp. 3d 359 (E.D.N.Y. 2015). There, the Eastern District of New York canvassed cases concerning online contracts of adhesion

6

her implication that contracts of adhesion presented to a website's users—or forum-selection clauses in those contracts—are categorically unenforceable. Courts routinely enforce such agreements, and the Supreme Court "has rejected the argument 'that a nonnegotiated forum-selection clause in a form contract is never enforceable simply because it is not the subject of bargaining.'" Rigsby v. GoDaddy Inc., No. 1:19-CV-3824-JPB, 2019 WL 9806587, at *4 (N.D. Ga. Nov. 25, 2019) (quoting Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 593 (1991)). Nor does the two-part test the Court must apply distinguish between electronically and physically transmitted forum-selection clauses.

Second, Plaintiff asserts Defendant never emailed or physically mailed her a copy of the Terms. Dkt. No. [26] at 13. While those are permissible methods of communicating a forum-selection clause to a consumer, no authority dictates they are the *only* methods. Even if, as Plaintiff claims, the Terms were presented as a hyperlink on the bottom of the OnlyFans website, Plaintiff has pointed to "nothing that *prevented* [her] from clicking on the link to read the terms and conditions that would apply to" her relationship with Defendant.[3] Feggestad v.

---

and applied the principles it gleaned to deny enforcement of a forum-selection clause. See id. at 403–05. Yet Berkson did not use or even discuss the Eleventh Circuit's test for assessing fraud or overreaching in a contract containing a forum-selection clause. That, of course, is the test the Court must apply here.

[3] In Feggestad, an email containing a hyperlink to terms and conditions provided sufficient notice of the forum-selection clause in those terms. That was so not simply because the terms were transmitted by email, but "because [the plaintiffs could not] demonstrate how they were prevented from reading the terms and conditions" once the terms were made available to them. 843 F.3d at 919.

Kerzner Int'l Bah. Ltd., 843 F.3d 915, 919 (11th Cir. 2016) (emphasis added); see also Lebedinsky v. MSC Cruises, S.A., 789 F. App'x 196, 201 (11th Cir. 2019) (per curiam) (forum selection clause was adequately communicated when a consumer "was required to follow two hyperlinks and then scroll down to locate the forum selection clause"); Fteja v. Facebook, Inc., 841 F. Supp. 2d 829, 838–40 (S.D.N.Y. 2012) (enforcing terms of service presented via hyperlink at the bottom of a webpage and to which users manifested assent by clicking "Sign Up").

To the contrary, Plaintiff's Complaint specifically alleges she "entered into a binding contract"—the Terms—and "performed pursuant to" that contract. Dkt. No. [1] ¶¶ 44, 46; see also id. ¶ 45. Plaintiff notes the Terms contain the "clause set[ting] out when [Defendant] will pay an [i]ncentive [p]ayment" for referring new users. Id. ¶ 18. Plaintiff cannot plausibly argue she was *unable* to become "meaningfully informed," Krenkel, 579 F.3d at 1282, of the same Terms to which she says she agreed. Dkt. No. [1] ¶ 44, 46. Cf. Nguyen v. Barnes & Noble, Inc., 763 F.3d 1171, 1176 (9th Cir. 2014) ("[C]ourts have consistently enforced browsewrap agreements where the user had actual notice of the agreement.").

Finally, Plaintiff claims Defendant did not "draw [her] attention to the specific details of the Terms of Service" because "nothing in the Terms hyperlink" revealed she was contracting away her ability to choose a litigation forum. Dkt. No. [26] at 15. This argument is without merit. The question is not whether the hyperlink's text disclosed the forum-selection clause, but whether that clause was conspicuously presented in the Terms themselves. See Krenkel, 579 F.3d at 1281

(determining whether the clause was "hidden or ambiguous" within the contract plaintiffs signed). Here, the clause was preceded by a heading in boldface type titled "Governing Law and Dispute Resolution." Dkt. No. [19-1] at 43. It was set "in identical typeface to" the rest of the Terms and was written in "clear, plain[] English." Estate of Myhra v. Royal Caribbean Cruises, Ltd., 695 F.3d 1233, 1245 (11th Cir. 2012) (enforcing a forum-selection clause "on page 128" of a cruise company's "obviously lengthy booklet" set "in very small, but legible, type"). In short, the Terms "clearly set out" the forum-selection clause, which identified in "clear language" the chosen forum, the disputes to be litigated there, and the law to be applied in deciding those disputes. Lebedinsky, 789 F. App'x at 200. As a result, the clause was reasonably communicated to Plaintiff and is not a product of fraud or overreaching.

### ii. *Depriving Plaintiff of Her Day in Court*

Plaintiff asserts that dismissal in favor of a British forum would be "gravely inconvenient" and would therefore deprive her of her day in court. Dkt. No. [26] at 17. She points to her personal circumstances—namely, the fact that she has only a high school education "and has been the primary provider for her immediate family despite at times struggling with homelessness." Id. at 18–19. She says it would be difficult to find an attorney to represent her in a foreign country and notes Defendant possesses superior economic means. Id. at 19.

The Court understands the significance of these challenges, but they do not constitute the kind of "inconvenience or unfairness" that, under controlling

9

precedent, warrant setting aside a forum-selection clause. Krenkel, 579 F.3d at 1281. "The financial difficulty that a party might have in litigating in the selected forum is not a sufficient ground by itself for refusal to enforce" such a clause. P & S Bus. Machs., Inc. v. Canon USA, Inc., 331 F.3d 804, 807 (11th Cir. 2003). Furthermore, each inconvenience Plaintiff argues she "would suffer by being forced to litigate in the contractual forum as [she] agreed to do was clearly foreseeable at the time of contracting." Atl. Marine, 571 U.S. at 64 (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 17–18 (1972)); see also Rucker v. Oasis Legal Fin., L.L.C., 632 F.3d 1231, 1237 (11th Cir. 2011). "[E]ven where," as here, "the forum clause establishes a remote forum for resolution of conflicts," Shute, 499 U.S. at 592, a plaintiff "bear[s] a heavy burden of proof" to show litigating in the contractual forum will be "gravely difficult and inconvenient," M/S Bremen, 407 U.S. at 17–18. See also Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd., 722 F. App'x 870, 884 (11th Cir. 2018) (per curiam). Given the foreseeability of the financial and logistical burdens of litigating in the Terms' specified forum, the Court cannot conclude Plaintiff has shouldered that burden. See Phillips v. Audio Active Ltd., 494 F.3d 378, 393 (2d Cir. 2007) (requiring individual plaintiff to litigate in England when "none of his witnesses, documents, or any parties to the action [were] located in England").

   *iii. Unfairness of the Chosen Law*

 Through the affidavit of an English attorney, Defendant contends English law will likely afford Plaintiff a remedy for each of her claims if they are

10

successful. See Dkt. No. [19-1] at 58–73. As a result, Defendant says, English and Welsh courts provide an "adequate forum for the claims asserted in Plaintiff's Complaint." Dkt. No. [28] at 13. Plaintiff offers no argument or evidence to the contrary.

Courts often allow breach-of-contract and other contract-related claims to proceed in English courts. See, e.g., Phillips, 494 F.3d at 392–93; Aviation One, 722 F. App'x at 885. Given the uncontested information supplied by Defendant's English attorney, there is no reason for the Court to conclude that "the remedies available in [England and Wales] are so inadequate that enforcement" of the parties' forum-selection clause "would be fundamentally unfair." Lipcon, 148 F.3d at 1297 ("We will not invalidate choice clauses . . . simply because the remedies available in the contractually chosen forum are less favorable than those available in the courts of the United States."). "[C]ourts have long recognized that the courts of England are fair and neutral forums." Don't Look Media, 2021 WL 2280897, at *10 (quoting Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d 953, 958 (10th Cir. 1992)).

In sum, Plaintiff has not shown why the Court should refuse to enforce the presumptively valid forum-selection clause in the Terms to which she assented.[4]

---

[4] Neither party directly contests Krenkel's fourth factor: whether "enforcement of the clause would contravene public policy." 579 F.3d at 1281. Though Plaintiff argues in general terms that social media companies "do not need [the] special protection" of forum-selection clauses, she cites no decision invalidating such a clause on public policy grounds. Dkt. No. [26] at 23. "Especially . . . given [the Court's] conclusion that English law provides adequate remedies," the Court

The private interest factors therefore "weigh entirely in favor" of litigation in England and Wales. Atl. Marine, 571 U.S. at 64. The Court must next determine whether this is the "unusual case[]" where dismissal is inappropriate despite the "counterweight of a forum-selection clause." Id.

**B.      Public Interest Factors**

That question contains three parts: (i) whether the courts of England and Wales are adequate and available alternative fora, (ii) whether Plaintiff can reinstate this action in those fora without undue inconvenience or prejudice, and (iii) whether the public interest factors favor dismissal.

"[A]n alternative forum is available 'when the defendant is amenable to process in the other jurisdiction' . . . [and] is adequate if it provides for litigation of the subject matter of the dispute and potentially offers redress for plaintiffs' injuries." King v. Cessna Aircraft Co., 562 F.3d 1374, 1382 (11th Cir. 2009) (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 n.22 (1981) (internal quotation marks omitted)). Defendant has expressly consented to service of process in England and Wales, Dkt. No. [19-1] at 28, and as explained above, courts in those jurisdictions provide fundamentally fair remedies, see Satz v. McDonnell Douglas Corp., 244 F.3d 1279, 1283 (11th Cir. 2001) (adequate alternative forum existed where "the remedies available . . . are neither 'clearly

---

finds the parties' forum-selection clause does not contravene public policy. Lipcon, 148 F.3d at 1299.

unsatisfactory' nor do they amount to 'no remedy at all' (quoting Piper Aircraft, 454 U.S. at 254, 255 n.22)).

Defendant has also consented to personal jurisdiction in the courts of England and Wales. Dkt. No. [19-1] at 28. That consent, along with Defendant's agreement to toll applicable statutes of limitations for 180 days following dismissal, see id. at 28–29, allow Plaintiff to reinstate this action in England or Wales without unnecessary prejudice. See Magnin v. Teledyne Cont'l Motors, 91 F.3d 1424, 1430 (11th Cir. 1996); Aviation One, 722 F. App'x at 885–86.

Thus, only the public interest factors remain. These include administrative difficulties due to court congestion, the interest in having localized controversies decided at home, and "the interest in having the trial of a diversity case in a forum that is at home with the law." Atl. Marine, 571 U.S. at 62 n.6 (quoting Piper Aircraft, 454 U.S. at 241 n.6). The Court takes each in turn, bearing in mind that Plaintiff retains the burden of demonstrating that this is the exceptional case where dismissal is unwarranted. See Aviation One, 722 F. App'x at 885.

    *i.    Administrative Difficulties*

Citing statistics from 2018, Plaintiff claims this Court can resolve her dispute relatively quickly and says she "has confidence in the Court's efficiency." Dkt. No. [26] at 19–20. Plaintiff admits, however, that she does not possess information about the relative congestion of the English court system. Id. at 20. Defendant contends dismissal will spare judicial resources that would otherwise

be spent on overseeing foreign discovery and adjudicating choice-of-law questions. Dkt. No. [19-1] at 24–25.

At most, this factor is neutral. At this stage, it is unclear to what extent discovery will involve foreign documents and witnesses. Nor is there any indication that the dockets of English and Welsh courts are more congested than this Court's docket. The Court therefore cannot conclude that Plaintiff has met her substantial burden as to this factor. See Aviation One, 722 F. App'x at 885.

> ii. *Interest in Deciding Localized Controversies at Home*

The Supreme Court has long recognized that "there is a local interest in having localized controversies decided at home." Piper Aircraft, 454 U.S. at 260. Pointing to the interest of the United States in allowing its citizens to choose a domestic litigation forum, Plaintiff asserts this Court's interest in adjudicating her dispute is superior to those of England and Wales. Dkt. No. [26] at 20–21. Defendant counters that it is incorporated in England and Wales, has its principal place of business in London, and "has no physical assets, property, or employees in Georgia." Dkt. No. [19-1] at 26–27. Defendant also argues that very few participants in its referral program reside in Georgia. Id. at 27.

Nonetheless, Plaintiff is correct that "there is a strong federal interest in making sure that plaintiffs who are United States citizens generally get to choose an American forum for bringing suit, rather than having their case relegated to a foreign jurisdiction." SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A., 382 F.3d 1097, 1104 (11th Cir. 2004) (citation and alterations omitted). In

the typical case where a foreign forum's interest is superior—including the case Defendant cites—most parties are foreign entities. See, e.g., id. at 1104 & n.10 (collecting cases); Republic of Pan. v. BCCI Holdings (Lux.) S.A., 119 F.3d 935, 953 (11th Cir. 1997); Piper Aircraft, 454 U.S. at 260 ("Apart from Piper and Hartzell, all potential plaintiffs and defendants are either Scottish or English."); Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1334 (11th Cir. 2011). But where, as here, an "injury occurs on home soil," "it is clear that [the] sovereign has a very strong interest" in providing its citizen a forum for litigation. SME Racks, 382 F.3d at 1104.

To be sure, England and Wales have a "substantial interest in holding businesses operating [there] accountable." Loya v. Starwood Hotels & Resorts Worldwide, Inc., 583 F.3d 656, 665 (9th Cir. 2009); see Republic of Pan., 119 F.3d at 953 ("The Cayman Islands, England, and Luxembourg have strong interests in . . . regulating the BCCI banking entities, which were incorporated in these countries."). And Defendant's commercial ties to Georgia are relatively thin. See SME Racks, 483 F.3d at 1104 (defendant "actively solicited business" in the American forum). Nonetheless, Plaintiff is a Georgia resident and she allegedly suffered financial injury in Georgia. Given the general interest of the United States in providing its citizens a forum to redress alleged injuries, this factor—considered in isolation—disfavors dismissal.

>                iii.     *Interest in Having a Trial in a Forum at Home with the Law*

Plaintiff does not dispute that, under the Terms, English and Welsh law govern this action. She argues this Court is "capable of applying" that law. Dkt. No. [26] at 21. Nonetheless, courts in England and Wales would "obviously be more familiar" with the law of their own jurisdictions, Aviation One, 722 F. App'x at 885, and a Georgia jury "would [not] be familiar with applying th[at] foreign law," Goldstein v. Hard Rock Cafe Int'l (USA), Inc., 519 F. App'x 653, 655 (11th Cir. 2013) (per curiam). This factor clearly favors dismissal. See Piper Aircraft, 454 U.S. at 251 ("[T]he public interest factors point towards dismissal where the court would be required to untangle problems . . . in law foreign to itself." (citation omitted)).

Given the "near-determinative weight" of the parties' forum-selection clause, these public interest factors collectively fail to carry Plaintiff's burden. Aviation One, 722 F. App'x at 884. The Court is bound to enforce the forum-selection clause, which binds Plaintiff to litigate her claims in England and Wales. Accordingly, Defendant's Motion to Dismiss Based on *Forum Non Conveniens* is **GRANTED**, subject to the conditions set forth below,[5] and Defendant's Motion

---

[5] The Eleventh Circuit routinely countenances—or imposes—conditions on *forum non conveniens* dismissals like those the Court places here. See Magnin, 91 F.3d at 1430; Aviation One, 722 F. App'x at 885–86 (conditioning dismissal where parties agreed to forum-selection clause). "[C]onditioning [a *forum non conveniens*] dismissal does not destroy finality, nor leave the case pending in the District Court." Leon, 251 F.3d at 1316. "Since the [Court's] dismissal is conditional, it may reassert jurisdiction in the event that the foreign court refuses to entertain the suit." Ford v. Brown, 319 F.3d 1302, 1310 (11th Cir. 2003).

to Dismiss Complaint in Part Pursuant to Federal Rule of Civil Procedure 12(b)(6) is **DENIED AS MOOT**.

## IV. CONCLUSION

In light of the foregoing, Defendant's Motion to Dismiss Based on *Forum Non Conveniens* [19] is **GRANTED**. Plaintiff's Complaint [1] is **DISMISSED WITHOUT PREJUDICE**, subject to: (i) Defendant's consent to service of process in, and personal jurisdiction in the courts of, England and Wales; and (ii) Defendant's agreement to toll any applicable statutes of limitations from the date Plaintiff initiated this action to 180 days after the date of this Order. Defendant's Motion to Dismiss Complaint in Part Pursuant to Federal Rule of Civil Procedure 12(b)(6) [20] is **DENIED AS MOOT**. The Clerk is directed to close this case.

**IT IS SO ORDERED** this 25th day of June, 2021.

_____
**Leigh Martin May
United States District Judge**